United States District Court
Southern District of Texas
**ENTERED**
June 05, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OCUSOFT, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-25-3241 |
| | § | |
| UNICON OPTICAL CO. LTD., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This dispute arises out of an alleged breach of a contract to manufacture colored contact lenses. OCuSOFT, a Texas corporation, alleges that Unicon Optical, a Taiwanese corporation, produced contact lenses that violated the quality-assurance specifications that the parties agreed to. (Docket Entry No. 1). Unicon has moved to dismiss the complaint for insufficient service of process and for failure to state a claim. (Docket Entry No. 10). After a careful review of the complaint, the motion to dismiss, the response, the reply, and the applicable law, the court denies the motion to dismiss for insufficient service of process and grants the motion to dismiss for failure to state a claim, in part with prejudice and in part without prejudice. The reasons for these rulings are set forth in detail below.

I.      **Background**

Unicon Optical Co. Ltd. is a Taiwanese limited company with its principal place of business in Taiwan. (Docket Entry No. 1 ¶ 10). In September 2023, OCuSOFT, Inc. entered into a Confidentiality, Supply, and License Agreement ("Supply Agreement") with Unicon. (Docket Entry No. 1 ¶ 6). Under the Supply Agreement, Unicon agreed to research, develop, design,

manufacture, market, produce, and supply contact lenses, and OCuSOFT agreed to purchase the contact lenses for resale in the United States.  (*Id.*).

In October 2023, the parties agreed to a Private Label Quality Agreement ("Quality Agreement").  (*Id.*).  Under the Quality Agreement, the parties agreed to comply "with Current Good Manufacturing Practices."  (*Id.*).  OCuSOFT agreed "to retain the trademark for the contact lenses, develop the marketing for the contact lenses, and maintain compliance with FDA regulations."  (*Id.*).  Unicon agreed to manufacture products that "conform to the United States Federal Food, Drug and Cosmetic Act (the 'FDCA') and/or applicable Medical Device Quality System Regulations (QSR)."  (*Id.* ¶ 7).[1]  After the parties entered into the Supply Agreement, OCuSOFT "spent over $800,000 for its first purchase of contacts and began to market lenses beginning in August of 2024."  (*Id.* ¶ 8).

In September 2024, OCuSOFT "was alerted to complaints regarding the use of the lenses." (*Id.*).  "Wearers of the lenses complained of the fit of the lenses and noted that it was irritating to the eye," and "[o]ptometrists reported edge lifting of the lenses."  (*Id.*).  "In response to such complaints, OCuSOFT sent the lenses to an independent lab for testing to ensure that the lenses met the specifications outlined in the Quality Agreement."  (*Id.*).  "The laboratory tested the base curve, diameter and pH of the lenses provided."  (*Id.*).  "The independent testing revealed that 50% of the plus (+) lenses tested were out of specification."  (*Id.* ¶ 9).

In September 2024, "after OCuSOFT shared these results with Unicon, Unicon conducted its own independent testing that yielded results reflecting that the lenses were within the specification set out in the contract."  (*Id.*).  OCuSOFT doubted the integrity of Unicon's

---

[1] The product specifications were detailed in a consulting agreement, which was not attached to OCuSOFT's complaint. (Docket Entry No. 1-2 at Schedule A).

representations about the results of the investigation. (*Id.*). OCuSOFT notified Unicon again of its results, but Unicon did not take steps to cure the alleged defects or to change its manufacturing processes. (*Id.* ¶ 10).

As a result, OCuSOFT sent a written demand to terminate the contract and for reimbursement of damages and expenses. (*Id.*). Unicon rejected the demand and countered with a demand of its own for OCuSOFT's alleged breach. (*Id.*). The parties continued to negotiate and exchange demands until February 2025, when OCuSOFT filed this lawsuit for breach of contract. (*Id.*). Because Unicon is a foreign entity that is not registered to conduct business in Texas, OCuSOFT served it through the Texas Secretary of State. (Docket Entry No. 7). Unicon challenges this service and whether the complaint states a claim on which relief can be granted. (Docket Entry No. 10).

## II.   The Legal Standards

### A.   Service of Process

Federal Rule of Civil Procedure 4(h) provides that service of process on a corporation, partnership, or association, whether foreign or domestic, may be served in a judicial district of the United States or in a foreign territory. Fed. R. Civ. P. 4(h). If service of process occurs in the United States, it must be done either according to state law or by delivering a copy of the summons and the complaint to an officer, managing or general agent, or other agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(h)(1)(A), 4(h)(1)(B). If service of process takes place in a foreign country, Rule 4(h)(2) requires compliance with the methods of service listed in Rule 4(f). Fed. R. Civ. P. 4(h)(2).

The rules for serving process are intended to give sufficient notice to defendants of any actions filed against them. *See, e.g.*, 3d CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 1061, at 311–12 (2002) (”[Federal Rule 4] was designed to provide maximum freedom and flexibility in the procedures for giving all defendants . . . no matter where they might be located, notice of the commencement of the action.”); *see also Goetz v. Synthesys Techs., Inc.*, 415 F.3d 481, 484 (5th Cir. 2005) (noting that the primary purpose of service requirements is to ensure defendants receive actual notice of the pendency of litigation against them).

A party may raise insufficient process or insufficient service of process by moving to dismiss under Rules 12(b)(4) or 12(b)(5).  The plaintiff bears the burden of establishing the validity of the service of process.  *See Aetna Business Credit Inc. v. Universal Decor & Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981) (citing *Familia de Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980)).  Another court in this district has outlined the proper procedure for a Rule 12(b)(5) motion:

> Plaintiffs normally meet the burden of establishing that the defendant was properly served by producing the process server's return of service, which is generally accepted as prima facie evidence of the manner in which service was effected. Unless some defect is shown on the face of the return, a motion to dismiss under Rule 12(b)(5) requires the defendant to produce admissible evidence establishing the lack of proper service.  Plaintiffs must produce admissible evidence showing that the service was proper, or creating a fact issue requiring an evidentiary hearing.

*Fyfee v. Bumbo Ltd.*, No. CIV.A. H-09-0301, 2009 WL 2996885, at *2 (S.D. Tex. Sept. 16, 2009) (quoting *Nabulsi v. Nahyan*, No. CIV A H-06-2683, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009), *aff'd sub nom. Nabulsi v. Bin Zayed Al Nahyan*, 383 F. App'x 380 (5th Cir. 2010)).

A court that grants a Rule 12(b)(5) motion has the discretion to retain the case and quash the service "where there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly." *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2nd Cir. 1985) (cleaned up).

**B.      Failure to State a Claim**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Eli Lilly & Co. v. Revive Rx, LLC*, No. CV H-23-3521, 2025 WL 3640703, at *5 (S.D. Tex. Dec. 15, 2025) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)).

**III.   Analysis**

**A.      Service of Process**

Section 17.044(b) of the Texas Civil Practice and Remedies Code permits substitute service on the Secretary of State for a nonresident defendant doing business in Texas who does not maintain a regular place of business in Texas, provided that the relevant proceeding arises from

business done in Texas and the nonresident is a party to the suit.  Texas Civil Practice & Remedies Code Section 17.042 explains that "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state."

"Absent fraud or mistake, the Secretary of State's certificate is conclusive evidence that the Secretary of State, as agent of [the defendant], received service of process for [the defendant] and forwarded the service as required by the statute." *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986).  The record includes a proper certificate from the Texas Secretary of State.  (Docket Entry No. 7).

OCuSOFT's service of process on Unicon satisfies the Texas statutory requirements. OCuSOFT is a Texas company.   Unicon, a foreign company, contracted with OCuSOFT.   And part of the contract is to be performed in Texas.     *See* TEX. CIV. PRAC. & REM. § 17.042(1). OCuSOFT is required to "devote its best sales and promotional efforts to distribute, market and sell the Contact Lens Products in the Territory," (Docket Entry No. 1-1 § 3.2), which includes Texas, (*see* Docket Entry No. 1-1 at 12 ("The United States of America and its Territories (Others by mutual agreement).")).  Meeting these rudimentary conditions is sufficient to bring Unicon within the Texas Long-Arm Statute. *See, e.g.*, *McLean v. Paradigm SRP LLC*, No. 04-22-00449-CV, 2023 WL 7133438, at *4 (Tex. App.—San Antonio Oct. 31, 2023, no pet.); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 885 (Tex. App.—Houston [14th Dist.] 2011, no pet.).  The Long-Arm Statute provides a "minimal pleading requirement" that "is satisfied by an allegation that the

nonresident defendant is doing business in Texas." *Dole v. LSREF2 APEX 2, LLC*, 425 S.W.3d 617, 624 (Tex. App. —Dallas 2014, no pet.).

Unicon responds that a single contract cannot establish personal jurisdiction over it in a Texas court under the Long-Arm Statute. (Docket Entry No. 12 at 7–9). Unicon's jurisdictional argument conflates service of process with a minimum-contacts analysis. Service of process is necessary to establish personal jurisdiction because proper service provides notice. *Child. of the Kingdom v. Cent. Appraisal Dist. of Taylor Cnty.*, 674 S.W.3d 407, 416 (Tex. App.—Eastland 2023, pet. denied) ("An important purpose of requiring service of process is to give citizens the opportunity to receive fair notice of pending legal proceedings . . . ."); *Rose v. Rose*, 117 S.W.3d 84, 87 (Tex. App.—Waco 2003, no pet.) ("Without actual service on a defendant or an effective substitute for service, a trial court generally lacks the power to render judgment against the defendant. The purpose of service of citation is to ensure that the defendant has notice of the suit." (citation omitted)). By contrast, the minimum-contacts analysis ensures that defendants are not unfairly subjected to litigation in a distant forum. *See Cirrus Design Corp. v. Berra*, 633 S.W.3d 640, 647 (Tex. App.—San Antonio 2021, no pet.); *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Unicon's argument that a single contract is insufficient for this Texas court to exercise jurisdiction over it raises the minimum-contacts issue, not the service-of-process issue.

Because OCuSOFT's complaint allegations satisfy Sections 17.044(b) and 17.042(1) of the Texas Civil Practice and Remedies Code, service of process is proper under Texas law. Unicon raises no challenge to service under Federal Rule 4(h)(2). The court declines to rule on Unicon's personal jurisdiction argument, which did not address sufficiently the relevant doctrine. Even a

single contract can be sufficient to confer jurisdiction in the appropriate case.  *See Michiana Easy*

*Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 787 (Tex. 2005).

> **B.**     **The Motion to Dismiss the Breach of Contract Claim**

The essential elements in a breach of contract claim are (1) the existence of a valid contract;

(2) performance or tendered performance by the plaintiff; (3) breach of the contract by the

defendant; and (4) damages sustained as a result of the breach.  *B & W Supply, Inc. v. Beckham*,

305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  "A breach occurs when a

party fails or refuses to do something he has promised to do."  *Mays v. Pierce*, 203 S.W.3d 564,

575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

OCuSOFT argues that Unicon was responsible for designing, manufacturing, labeling, and

packaging the contact lenses in compliance with applicable laws and quality standards, including

the Federal Food, Drug, and Cosmetic Act (FDCA) and current "Good Manufacturing Practices."

(*See* Docket Entry No. 1 ¶¶ 6–7).  OCuSOFT alleges that Unicon breached that obligation by

failing to adhere to certain quality standards, based on independent laboratory testing that revealed

that approximately 50% of the plus (+) lenses did not meet the standards.  (*See* ¶¶ 9–14).

OCuSOFT also alleges that Unicon breached the indemnification provision of the Supply

Agreement, (Docket Entry No. 1-1 § 12.1), by failing to indemnify and hold it harmless for losses

arising from the breach of the labelling and packing obligations.  (Docket Entry No. 1 ¶ 14).

Unicon responds that OCuSOFT is attempting to avoid the contractual limit on liability

and damages.  The contract provides that replacement is the only remedy for breaches of the agreed

quality standards.  (*See* Docket Entry No. 1-1 § 11.1).  Unicon argues that by focusing on the

packaging issues, OCuSOFT is trying to avoid the warranty limits.  OCuSOFT's claim for breach

of contract is deficient, Unicon argues, because OCuSOFT does not explain how the product packaging deviated from contractual requirements.

The court finds Unicon's argument persuasive.  There is no allegation that the product packaging misrepresented the product quality.  For example, the complaint alleges that the "laboratory tested the base curve, diameter and pH of the lenses provided."  (Docket Entry No. 1 ¶ 8).  But it does not allege that the packaging listed those attributes; had it done so, the product quality deviations could have made the labels misleading.  Without an allegation that the product-quality issues created misleading packaging or advertisements, there is no allegation that Unicon breached the Supply Agreement's requirement that Unicon properly and accurately label the packaged products.

Although Rule 15(a)(2) directs that leave to amend "shall be freely given when justice so requires," courts retain discretion to deny leave to amend for undue delay, repeated failure to cure deficiencies, prejudice, or futility.  Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).  This claim is not futile, because the court cannot find that OCuSOFT is unable to plead additional information about how the product packaging, representations about the product, and the alleged deviations make the packaging and the representations misleading.  OCuSOFT's breach-of-contract claim is dismissed, without prejudice and with leave to amend.

**B.      The Motion to Dismiss the Promissory Estoppel Claim**

To plead promissory estoppel, a plaintiff must allege facts showing: (1) a promise; (2) foreseeability of reliance by the promisor; (3) substantial and reasonable reliance by the promisee to its detriment; and (4) enforcement of the promise is necessary to avoid injustice.  *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Fretz Constr. Co. v. S. Nat'l Bank of Houston*, 626 S.W.2d 478, 480 (Tex. 1981).  OCuSOFT argues that Unicon promised that the packaging for the

contact lenses would accurately describe the lenses' quality and specifications and that the packaging and products would conform to applicable U.S. regulatory and labeling requirements. (Docket Entry No. 1 ¶ 16). When, as here, the complaint pleads that an alleged promise is also set out under an enforceable written agreement, promissory estoppel fails as a matter of law. *See Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 995–96 (S.D. Tex. 2011); *Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.,* 154 S.W.3d 634, 639–40 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

OCuSOFT responds that Rule 8(d)(3) allows a party to plead "as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). It argues that courts routinely permit plaintiffs to maintain both breach-of-contract and promissory-estoppel claims until the existence and scope of the contract are resolved. (Docket Entry No. 11 at 11–12). But the existence and scope of the contract is not in dispute. The contract is in writing and is attached to the complaint. No party is arguing that the contract is invalid. No party is arguing that there are additional terms outside the contract. The question is whether Unicon's conduct breached the promises made in the contract. Because the complaint does not allege the contract is invalid or that any promise exists outside that contract, OCuSOFT's promissory-estoppel theory fails even if pleaded in the alternative. *See C&K Trucking, LLC v. Ardent Mills LLC*, No. 3:20-CV-1104-K, 2021 WL 2895866, at *4 (N.D. Tex. July 9, 2021); (explaining that a promissory-estoppel claim only "becomes available in the *absence* of a valid and enforceable contract" (quoting *Williams v. Colonial Bank, N.A.*, 199 F. App'x 399, 403 (5th Cir. 2006) (per curiam))).

OCuSOFT argues that it should have leave to amend its complaint to save its promissory-estoppel claim. That argument is precluded by the written contract that OCuSOFT is seeking to enforce. OCuSOFT's surreply makes a conclusory reference to "pre- and post-contractual

10

assurances that packaging and labeling would match FDA registered product information and that any discrepancies would be corrected before shipment." (Docket Entry No. 14 at 9). But the mere fact that a contractual promise was also made before and after the contract was entered does not give rise to a separate estoppel claim if there is no "additional obligation" created. *Fretz Const. Co. v. S. Nat. Bank of Houston*, 626 S.W.2d 478, 481 (Tex. 1981). There is no such additional obligation alleged here. The court denies OCuSOFT's request for leave to amend.

OCuSOFT's promissory-estoppel claim is dismissed, with prejudice, because amendment would be futile.

## IV. Conclusion

The court denies the motion to dismiss for insufficient service of process and grants the motion to dismiss for failure to state a claim, in part with prejudice and in part without prejudice. (Docket Entry No. 10). OCuSOFT's contract claim is dismissed without prejudice, but its promissory-estoppel claim is dismissed with prejudice. OCuSOFT must amend its complaint by June 26, 2026.

SIGNED on June 4, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge

11